UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| CINCINNATI INSURANCE COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GRAND POINTE, LLC; CENTURY | ) | No. 1:05-CV-161 (lead case) |
| CONSTRUCTION OF TENNESSEE, LLC, a | ) | |
| Tennessee Entity; CENTURY | ) | Judge Curtis L. Collier |
| CONSTRUCTION OF TENNESSEE, LLC an | ) | |
| Alabama Entity; SOUTHERN CENTURY, | ) | |
| LLC; CEMC IV, L.P.; CLIFFORD BYRD | ) | |
| HARBOUR; ROBERT H. CHANDLER; and | ) | |
| GRAND POINTE CONDOMINIUM | ) | |
| OWNERS ASSOCIATION, | ) | |
| | ) | |
| Defendants. | ) | |

## **M E M O R A N D U M**

Before the Court is Plaintiff Cincinnati Insurance Company's ("Cincinnati") motion for summary judgment (Court File No. 47) and memorandum in support (Court File No. 48).[1] Defendant Grand Pointe Condominium Owners Association ("Grand Pointe") filed a response in opposition (Court File No. 73) and Defendants Grand Pointe, LLC ("Grand Pointe LLC"); Century Construction of Tennessee, LLC, a Tennessee Limited Liability Company; Century Construction of Tennessee, LLC, an Alabama Limited Liability Company; Southern Century, LLC; CEMC IV,

---

[1] Also pending before the Court are Plaintiff RLI Insurance Company's motion for summary judgment (Court File No. 57), Grand Pointe's motion for summary judgment against RLI Insurance Company (Court File No. 90), and Defendants' motion for summary judgment against RLI Insurance Company (Court File No. 100). Due to the additional issues raised in these motions and for the purpose of clarity, the Court will address these three motions in a separate opinion.

L.P.; Clifford Byrd Harbour; and Robert H. Chandler (collectively referred to as "Defendants") also filed a response in opposition (Court File No. 75). Subsequently, several additional filings were made in support of and in opposition to Cincinnati's motion for summary judgment (Court File Nos. 87, 88, 89, 93, 94, 99).[2]

After consideration of the above and for the following reasons the Court will **GRANT** Cincinnati's motion for summary judgment (Court File No. 47) and **DECLARE** Cincinnati has no duty to defend or indemnify Defendants.

I. **STANDARD OF REVIEW**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the burden is on the moving party to conclusively show there is more than a doubt genuine issues of material fact exist, *Frazier v. Honda Am. Mfg., Inc.*, 431 F.3d 563, 565-66 (6th Cir. 2005), and the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Cummings v. City of Akron*, 418 F.3d 676, 682 (6th Cir. 2005). However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed.

---

[2] The Court did not consider the reply brief filed by Cincinnati on May 9, 2006 (Court File No. 86) because it was stricken from the record (Court File No. 98).

2d 265 (1986); *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. at 2552.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005). The standard for summary judgment mirrors the standard for directed verdict. *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52, 106 S. Ct. at 2512. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. *Id.* at 248, 106 S. Ct. at 2505. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.*; *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton County, Ohio*, 430 F.3d 783, 787 (6th Cir. 2005).

## II. RELEVANT FACTS

Defendants are entities and individuals that developed and/or constructed a condominium building in Orange Beach, Alabama. In 2001, multiple potential unit owners filed suit in Baldwin

County, Alabama against Grand Pointe LLC (Court File No. 48, Part 3).[3] These lawsuits basically allege specific condominium units were not worth the promised value because they were incomplete and not as luxurious as promised (*See Id.* at pp. 3, 6, 13, 17-18, 25). One of the three lawsuits claimed "during a rainstorm . . . unit 201 flooded . . ." (*Id.* at p. 25).

At some point after these lawsuits were filed, Clifford Harbour, on behalf of himself and the other Defendants, purchased a commercial umbrella liability policy to insure against risks related to the condominium building. The policy was purchased from Stroud Cowart, an agent of Cincinnati who worked for Huffaker-Trimble Insurance Agency (Court File No. 75, Part 2, Affidavit of Clifford Byrd Harbour, III ("Harbour Aff.") at ¶ 15-16). Mr. Harbour informed Mr. Cowart about the previously mentioned lawsuits. Cincinnati issued the umbrella policy to Century Construction of Tennessee, LLC. However, the policy includes an endorsement that adds other named insureds including Southern Century, LLC, Mr. Harbour, CEMC IV, Grand Pointe LLC, and Robert Chandler. The policy was effective from January 29, 2002 through January 29, 2004. (Court File No. 1, Exh. A).

On August 27, 2003 Grand Pointe filed suit in Baldwin County, Alabama against Defendants and other entities and individuals associated with the condominium building. Grand Pointe asserts the following causes of action against Defendants in its seventh amended complaint[4]: (1)

---

[3] Ben Roberts filed suit on March 7, 2001 (Court File No. 48, Part 2), Sarah and Wess Moss filed suit on March 12, 2001, and Joe and Pat Belleville filed suit on July 23, 2001. The Belleville suit was also filed against Southern Century, LLC.

[4] The parties mostly reference the fourth amended complaint. After Cincinnati filed its reply brief, Grand Pointe filed a seventh amended complaint. Some additions to the seventh amended complaint show a clear intention on the part of Grand Pointe to allege sufficient facts for this Court to determine Cincinnati has a duty to defend and indemnify Defendants. Since the seventh amended complaint contains the most recent allegations and because the amended complaint was filed before

4

Negligence; (2) Wantonness; (3) Breach of Warranty; (4) Breach of Contract; (5) Violations of Alabama's Uniform Condominium Act; and (6) Misrepresentation and/or Suppression (Court File No. 89, Part 3, Seventh Amended Complaint). According to Grand Pointe's complaint, Defendants negligently or wantonly (a) failed to properly design, supply, install, and/or specify components of the structure, (b) failed to supervise and/or inspect the construction of the condominium building; (c) installed and/or applied materials utilized in the construction of the condominium structure; (d) manufactured, supplied, inspected, and/or installed building components; (e) failed to determine whether materials and systems complied with applicable codes, specifications, and/or standards; (f) made misrepresentations as to code compliance; (g) misrepresented and/or certified the building components and/or construction of the condominium building; and (h) failed to repair and/or properly analyze application of the building components (*Id.* at ¶¶ 27-32).

With respect to the breach of warranty cause of action, Defendants allegedly warranted the condominium building, structure, and components were suitable for their intended uses, met the applicable plans and specifications, and were code compliant. Defendants also allegedly breached the warranties by failing to provide components and/or finished products suitable for the intended purpose and/or by installing components in a manner inconsistent with the plans, specifications, and industry standards (*Id.* at ¶¶ 35-38). Grand Pointe further submits Defendants breached contract obligations owed to it and/or its membership (*Id.* at ¶¶ 40-41).

As for the Alabama Uniform Condominium Act, Defendants allegedly failed to provide a condominium building substantially consistent with the declarations, applicable regulations and

---

the Court ruled on the summary judgment motion, the Court will refer to and consider only the seventh amended complaint.

codes, industry standards, and the plans and specifications. In addition, Grand Pointe avers the Uniform Condominium Act was violated when Defendants provided improper information concerning the condominium maintenance expenses (*Id.* at ¶¶ 44-45).

Regarding the misrepresentation and suppression causes of action, Grand Pointe posits Defendants knew or should have known about various problems with the condominium units but concealed the problems (*Id.* at ¶ 49). Specifically, Grand Pointe states "defendants . . . knew, or should have known, that the improper use of non-compliant sliding glass door and/or windows incorporated in the building envelope, as well as the lack of properly installed exterior wall system, exterior coating system, roofing system, and sealants would result in the propensity of the building systems to permit moisture intrusion" (*Id.* at ¶ 51).

As a result of Defendants' alleged negligence and wantonness, Grand Pointe alleges it and its membership have suffered several different kinds of damages (*Id.* at ¶¶ 30, 34). In particular, Grand Pointe avers "[a]s a direct and proximate consequence of the [] conduct of the Defendants . . . [Grand Pointe] and/or its membership have been caused to suffer . . . other **consequential damage caused by the entry of moisture into the condominium building structure**" (*Id.* (emphasis added)).

In addition, the following allegations are made:

> Defendants provided limited labor and materials in connection with the actual construction of the Grand Pointe Condominium building, the scope of their actual work generally limited to installation of reinforced concrete walls. All other labor and materials utilized in construction of the Grand Pointe Condominium building were provided by subcontractors. As a result of the negligence/wantonness of the . . . Defendants, **work performed and materials supplied by other subcontractors** (some are parties to this litigation while others are not) **has suffered physical damage** and must be repaired or replaced by [Grand Pointe]. Furthermore, the Defendant subcontractors and material suppliers performed their work negligently/wantonly, or supplied and installed materials negligently/wantonly, so

6

> that work performed and materials supplied by the . . . Defendants, and **work performed and materials supplied by other subcontractors not parties to this litigation, was damaged** and must be repaired or replaced by [Grand Pointe]. Furthermore, in the process of repairing or replacing the defective work, and repairing or replacing the now damaged but otherwise not defectively installed work and materials, **physical damage to presently undamaged non-defective work and materials will occur**. This further damage to property is a proximate result of the negligence/wantonness of all Defendants and is a loss to [Grand Pointe].

(*Id.* at ¶ 26 (emphasis added), *see also*, ¶¶ 29, 33, 37, 42, 46, 50).

Cincinnati agreed to provide Defendants with a defense to the Grand Pointe suit subject to a reservation of rights (Court File No. 4, Amended Complaint, ¶ 19). Subsequently, Cincinnati brought the present action seeking a declaration it has no duty to defend or indemnify Defendants and reimbursement of all fees and costs incurred by Cincinnati in providing Defendants a defense in the Grand Pointe action (*Id.* at ¶ 38). On March 13, 2006 Cincinnati filed a motion for summary judgment contending it does not have a duty to defend on indemnify Defendants because (a) there are no allegations of "property damage" as that term is defined in the policy and by Tennessee case law; (b) there has not been an "occurrence" as that term is defined in the policy; (c) several policy exclusions apply; and/or (d) the known loss doctrine and loss in progress doctrine apply (Court File Nos. 47, 48).

### III. DISCUSSION

#### A. Duty to Defend

Whether an insurance company has a duty to defend an insured in an underlying action presents a legal question. *St. Paul Fire & Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 833 (Tenn. 1994); *Morgan v. Utica Mut. Ins. Co.*, 2000 WL 1276755, at *2 (6th Cir. Aug. 30, 2000)

(unpublished). Under Tennessee law,[5] an insurance company's duty to defend its insured is triggered by a complaint that alleges a potential basis for the claimant to recover against the insured that is within the risk insured against. *Torpoco*, 879 S.W.2d at 835; *Bituminous Fire & Marine Ins. Co. v. Izzy Rosen's, Inc*., 493 F.2d 257, 263 (6th Cir. 1974) (applying Tennessee law). If it is plain from the face of the underlying complaint the allegations fail to state facts that bring the case within or potentially within the policy, no duty to defend exists. *Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471, 480 (Tenn. Ct. App. 1996). An insurer's duty to defend depends solely on the allegations of the complaint filed against the insured. *See Torpoco*, 879 S.W.2d at 834-35. "If even one of the allegations is covered by the policy, the insurer has a duty to defend, irrespective of the number of allegations that may be excluded by the policy." *Drexel Chem. Co.*, 933 S.W.2d at 480.[6]

In Tennessee, exceptions, exclusions, and limitations in insurance policies must be construed against the insurance company and in favor of the insured. *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 886 (Tenn. 1991). The entire policy, however, including insuring clauses and exceptions thereto, must be read as a whole. *Am. Sav. & Loan Ass'n v. Lawyers Title Ins. Corp.*, 793 F.2d 780, 782 (6th Cir. 1986). Further, exceptions should not be construed so narrowly as to defeat their evident purpose. *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 8 (Tenn. Ct. App. 1998). Guided by these general rules of interpretation, the Court will now discuss the policy.

    **1.    Relevant Policy Language**

---

[5] All parties agree Tennessee law controls in this declaratory judgment action.

[6] Since the Court need only to look at the face of the underlying complaint, Defendants' argument the Court should delay a determination on the duty to defend issue to allow the parties to conduct additional discovery (Court File No. 75, pp. 1, 5) is without merit.

**A. Insuring Agreement**

We will pay on behalf of the insured the 'ultimate net loss' which the insured is legally obligated to pay as damages . . . because of . . . "property damage" covered by this policy occurring during the policy period and caused by an "occurrence"

. . .

**B. Exclusions**

. . .

**3. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**a.** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**b.** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

. . .

**5. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**6. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

. . .

**Section V - Definitions**

. . .

**2. Occurrence**

The policy defines an occurrence as:

    **a.** An accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in "bodily injury" or "property damage".

    All damages arising from continuous or repeated exposure to substantially the same general conditions shall be deemed one "occurrence."
    . . .

. . .

**6.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.** You have failed to fulfill the terms of a contract or agreement;

    If such property can be restored to use by:

    **a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

    **b.** Your fulfilling the terms of the contract or agreement.

. . .

**12.** "Property damage" means

    **a.** Physical injury to or destruction of tangible property including all resulting loss of use . . . .

    **b.** Loss of use of tangible property that is not physically injured.

10

. . .

**18.** "Your product" means:

    **a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    **(1)** You;

    **(2)** Others trading under your name; or

    **(3)** A person or organization whose business or assets you have acquired; and

    **b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

. . .

**19.** "Your work" means:

    **a.** Work or operations performed by you or your behalf; and

    **b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

    **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your work; and

    **b.** The providing of or failure to provide warnings or instructions.

(Court File No. 1, Exh. A; Court File No. 48, pp. 8-13).

### 2. Coverage

Cincinnati argues the underlying complaint merely asks for damages needed to correct faulty workmanship which, under the policy and Tennessee law, does not fall within the scope of "property damage." Grand Pointe and Defendants agree faulty workmanship is not covered by the policy

11

(Court File No. 73, p. 6; Court File No. 75, pp. 6-7). However, Grand Pointe and Defendants argue the underlying complaint does more than request damages to repair faulty workmanship (*Id.*). Specifically, they point to the following allegations contained in the underlying complaint: (1) Grand Pointe has suffered consequential damage caused by the entry of moisture into the condominium building structure; (2) work performed and materials supplied by other subcontractors has suffered physical damage; and (3) in the process of repairing or replacing the defective work, physical damage to presently undamaged non-defective work and materials will occur.

In support of their respective positions, the parties have discussed at length three Tennessee cases, *Vernon Williams & Son Constr., Inc. v. Continental Ins. Co.*, 591 S.W.2d 760 (Tenn. 1979); *Standard Fire Ins. Co. v. Chester-O'Donely & Assocs., Inc.*, 972 S.W.2d 1 (Tenn. Ct. App. 1998) (decided in part under Kentucky law); and *Travelers Indem. Co. of Am. v. Moore & Assoc., Inc.*, 2005 WL 2293009 (Tenn. Ct. App. Sept. 20, 2005) (slip copy), *permission to appeal granted* on March 20, 2006. The Court will briefly summarize these cases. In *Vernon Williams*, an insurance company refused to defend its insured for breach of contract claims and faulty workmanship for improper design of concrete work and insufficient warehouse slabs, among other things. *Vernon Williams*, 591 S.W.2d at 761. Specifically, faulty workmanship had caused a wall and floor to crack, leaving the building in an unusable condition. *Id.* The insurance policy provided there would be coverage for "property damage . . . caused by an Occurrence" and the policy defined property damage as "'injury to or destruction of tangible personal property'" *Id.* at 761. The Tennessee Supreme Court held "a claim limited to remedying faulty workmanship or materials does not constitute 'injury to or destruction of tangible property'." *Id.* at 763. The Court reasoned

> The risk intended to be insured is the possibility that the goods, products, or work of
> the insured, once relinquished or completed, will cause bodily injury or damage to

12

> *property other than to the product or completed work itself . . . .*
>
> The coverage is for tort liability for physical damages to *others* and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.

*Id.* at 764 (emphasis added) (citation omitted).

In *Chester-O'Donely* the builder of a music building in Clarksville, Tennessee sued the insured, a subcontractor, for providing a defective heating and air conditioning system. *Chester-O'Donely*, 972 S.W.2d at 4. The problems with the system were alleged to be so significant the entire heating and air conditioning system had to be replaced. In removing the system, the walls and ceilings of the music building were damaged. In its lawsuit against the insured, the builder sought to recover damages for delay to the completion of the music building, damages to its business reputation, and damages stemming from the replacement of the defective heating and air conditioning system. *Id.* at 4, 12.

The insurance policy limited coverage to "physical injury to tangible property and to the loss of use of tangible property other than the insured's work that has not been physically injured." *Id.* at 12. Further, there was an "impaired property" exclusion. The Tennessee Court of Appeals found these two policy provisions, read together, excluded coverage if there had "been no physical injury to tangible property other than the insured's work." *Id.* The court found the underlying complaint sought damages that did not involve physical injury to tangible property to the insured's work, with the exception of the damage to the walls and ceiling because that work was not the insured's work. *Id.* at 12.

In *Moore*, an insurer of a general construction contractor brought an action for a declaration it had no duty to defend or indemnify against the claims made against the contractor. The contractor

13

was the designer and builder of a hotel in Houston, Texas. *Moore*, 2005 WL 2293009 at *1. An action was brought against the contractor for damages caused by alleged construction and design defects. Specifically, due to faulty installation of windows, water had penetrated the walls of the hotel causing damage to the walls, room finishes, and fixtures. *Id.* at *1, *4. The insurance policy provided the insurance company was only obligated to pay damages for property damage to which the insurance applies. *Id.* at *2. Property damage was defined as "physical injury to tangible property, including all resulting loss of the use of that property." *Id.* at *3. Although the contractor was the designer/builder of the hotel, certain property was not included in its work product. In particular, "vinyl wall covers" and "decorative light fixtures" were to be provided by the owner. Therefore, the court concluded, the underlying complaint "includes a claim of damages against [the contractor] . . . apart from correcting [the contractor's] faulty workmanship." *Id.* at 4.

After carefully considering these cases, argument of counsel, and the policy as a whole, the Court finds the only damages alleged in the underlying complaint are damages not covered by the policy. The damages alleged are damages to the condominium building, which is what Defendants were contracted to design and build. Unlike *Chester-O'Donely* and *Moore*, there is no allegation of damage to something other than Defendants' own work product. *See Chester-O'Donely*, 972 S.W.2d at 12 (finding a duty to defend because the removal of duct work caused damages to something other than the insured's work product); *Moore,* 2005 WL at *4 (holding there was "property damage" under the policy because of damage to wall coverings and fixtures that were provided by the owner); *see also Blaylock & Brown Const., Inc. v. AIU Ins. Co.*, 796 S.W.2d 146, 152-53 (Tenn. Ct. App. 1990) (explaining a suit by a property owner grounded on breach of contract, breach of warranty, and negligence which sought damages resulting from the construction

14

performed under a contract between the contractor and property owner was not covered "property damage provided by the standard comprehensive general liability policy . . . ."); *State Auto Ins. Cos. v. Gordon Const., Inc.*, 2001 WL 513884, at *5 (Tenn. Ct. App. May 15, 2001) (unpublished) (rejecting the argument a claim for "consequential damages" resulted in coverage because the consequential damages "flow purely from [the contractor's] failure to perform its work according to the contract."). Accordingly, the Court concludes Cincinnati does not have a duty to defend Defendants in the Alabama litigation.

The Court notes Grand Pointe's and Defendants' argument *Vernon Williams* and its progeny are not controlling authority in this case. The policy at issue is based on a standard 1986 commercial general liability form published by the Insurance Services Office, Incorporated ("ISO"). Several courts, including the *Vernon Williams* court, construed the meaning of "property damage" and the business risk exclusions based on the 1973 ISO form. Notably, the 1986 ISO form includes an express exception to the "your work" exclusion that was not included in the 1973 ISO form.[7] This exception states the "your work" exclusion "does not apply if the damaged work or the work out of which the damage arises was performed on [the insured's behalf] by a subcontractor." *French v. Assurance Co. of Am.*, -- F.3d --, 2006 WL 1099471, at *6 (4th Cir. 2006).

Some courts have held the new subcontractor exception abrogates the broad holdings of earlier cases, like *Vernon Williams*, that construed the 1973 ISO form. *Id.* at *11; *American Family Mut. Ins. Co. v. Am. Girl, Inc.*, 673 N.W.2d 65, 83-84 (Wis. 2004); *see also O'Shaughnessy v. Smuckler Corp.*, 543 N.W.2d 99 (Minn. Ct. App. 1996). Although the Court understands the

---

[7] The "your work" exclusion in the policy at issue is quoted in **III(A)(1)** of this memorandum.

15

rationale of these decisions, several Tennessee cases have adopted the holding of *Vernon Williams* in cases where the 1986 ISO form was used. The Court concludes Tennessee courts, in the future, may very well decide the subcontractor exception to the "your work" exclusion results in coverage in a case such as this where there has been faulty subcontractor work that has resulted in damage to the contractor's non-defective work. However, it is not the province of this Court to rewrite well established Tennessee law without some indication from the Tennessee Supreme Court *Vernon Williams* or later decisions relying on it were abrogated by the addition of the subcontractor exception.

In light of the foregoing, the Court will **GRANT** summary judgment in favor of Cincinnati and **DECLARE** Cincinnati has no duty to defend Defendants in the Alabama litigation.

### 3. Known Loss Doctrine and Loss in Progress Doctrine

Since the Court has already concluded Cincinnati has no duty to defend, it will not address whether Defendants' knowledge of the three lawsuits filed before the policy was issued requires the Court to decide the current motion in Cincinnati's favor. Further, for the same reason, it is unnecessary for the Court to decide whether Cincinnati is estopped from raising the known loss doctrine and loss in progress doctrine.

### B. Duty to Indemnify

An insurer's duty to defend is separate and distinct from, and broader than the insurer's obligation to pay claims under a policy. *See Drexel Chem. Co.*, 933 S.W.2d at 480; *Jackson Hous. Auth. v. Auto-Owners Ins. Co*., 686 S.W.2d 917, 922 (Tenn. Ct. App. 1984). "Whereas the duty to defend depends only upon the facts as alleged to be, the duty to indemnify, i.e., ultimate liability, depends rather upon the true facts." *Torpoco*, 879 S.W.2d at 835 (*quoting Am. Policyholders' Ins.*

16

*Co. v. Cumberland Cold Storage Co.*, 373 A.2d 247 (Me. 1977)).

Defendants urge the Court not to make a declaration with respect to Cincinnati's duty to indemnify until the underlying Alabama litigation is concluded. Since an insurer's duty to indemnify is sometimes dependent on the outcome of the underlying case, a declaration as to the duty to indemnify may be premature until the underlying claims have been resolved. *See Nationwide Ins. v. Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995) (affirming a district court's decision not to reach the duty to indemnify issue because the district court would have been required to address a factual question "at the heart of the [underlying suit]"); *Armstrong v. Alabama Power Co.*, 667 F.2d 1385, 1388-89 (11th Cir. 1982) (affirming dismissal of indemnity suits as premature prior to entry of judgment in underlying lawsuit); *A/S J. Ludwig Mowinckles Rederi v. Tidewater Constr. Co.*, 559 F.2d 928, 932 (4th Cir. 1977) (holding indemnification issue not ripe for adjudication prior to determination of liability or a settlement in underlying lawsuits); *cf. Auto Owners Ins. Co. v. Harrell's Fertilizer, Inc.*, 2006 WL 156742, at *3-*4 (E.D. Tenn. Jan. 20, 2006) (slip copy) (holding a duty to defend exists but deferring whether the insurance company has a duty to indemnify until there was a resolution of the underlying lawsuit); *Topmost Chem. & Paper Corp. v. Nationwide Ins. Co.*, 2002 WL 1477880, *7 (W.D. Tenn. Apr. 23, 2002) (unpublished) (stating declaratory relief as to indemnity issue is premature where underlying lawsuit not yet resolved). However, a court may grant summary judgment on the issue of indemnification if it "can determine the allegations in the complaint could under no circumstances lead to a result which would trigger the duty to indemnify." *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001); *see Policeman's Ben. Ass'n of Nashville v. Nautilus Ins. Co.*, 2002 WL 126311, at *8 (Tenn. Ct. App. Feb. 1, 2002) (unpublished). Since Cincinnati has no duty to defend, "[i]t logically follows . . . there is no

17

duty to indemnify." *Standard Const. Co., Inc. v. Md. Cas. Co.,* 2002 WL 1477886, at *5 (W.D. Tenn. Apr. 23, 2002) (unpublished). As discussed previously, the underlying claims in the Alabama lawsuit do not potentially fall within the parameters of the insurance policy at issue. Thus, even if the allegations were proven true, they would not trigger a duty to indemnify. Accordingly, the Court will **GRANT** Cincinnati's motion for summary judgment and **DECLARE** Cincinnati has no duty to indemnify Defendants.

### III.   CONCLUSION

In light of the above, the Court will **GRANT** Cincinnati's summary judgment motion (Court File No. 47) and **DECLARE** Cincinnati has no duty to defend or indemnify Defendants.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**