UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| CINCINNATI INSURANCE COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GRAND POINTE, LLC; CENTURY | ) | No. 1:05-CV-161 |
| CONSTRUCTION OF TENNESSEE, LLC, a | ) | |
| Tennessee Entity; CENTURY | ) | Judge Curtis L. Collier |
| CONSTRUCTION OF TENNESSEE, LLC an | ) | |
| Alabama Entity; SOUTHERN CENTURY, | ) | |
| LLC; CEMC IV, L.P.; CLIFFORD BYRD | ) | |
| HARBOUR; ROBERT H. CHANDLER; and | ) | |
| GRAND POINTE CONDOMINIUM | ) | |
| OWNERS ASSOCIATION, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| RLI INSURANCE COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GRAND POINTE CONDOMINIUM | ) | |
| OWNERS ASSOCIATION; GRAND | ) | |
| POINTE, LLC; CENTURY CONSTRUCTION | ) | No. 1:05-CV-157 |
| OF TENNESSEE, LLC, a Tennessee | ) | |
| Limited Liability Company; CENTURY | ) | Judge Curtis L. Collier |
| CONSTRUCTION OF TENNESSEE, LLC, | ) | |
| an Alabama Limited Liability Company; | ) | |
| CLIFFORD BYRD HARBOUR, III; ROBERT | ) | |
| H. CHANDLER; SOUTHERN CENTURY, | ) | |
| LLC; and CEMC IV, L.P., | ) | |
| | ) | |
| Defendants. | ) | |

**M E M O R A N D U M**

Before the Court are competing motions for summary judgment. On March 30, 2006 Plaintiff RLI Insurance Company ("RLI") filed a motion for summary judgment (Court File No. 57) contending it has no duty to defend or indemnify any of the defendants. A few months later, Defendant Grand Pointe Condominium Owners Association ("Grand Pointe")[1] filed a motion for summary judgment (Court File No. 90) and Defendants Grand Pointe, LLC; Century Construction of Tennessee, LLC, a Tennessee Limited Liability Company; Century Construction of Tennessee, LLC, an Alabama Limited Liability Company; Clifford Byrd Harbour, III; Robert H. Chandler; Southern Century, LLC; and CEMC, L.P. (collectively "Defendants") filed a motion for summary judgment (Court File No. 100). Both Grand Pointe and Defendants assert in their motions for summary judgment RLI has a duty to defend (and possibly indemnify) Defendants. The parties have filed several briefs in support of and opposition to the above motions for summary judgment (Court File Nos. 58, 76, 84, 85, 87, 91, 92, 101, 102, 103, 104, 107).[2]

After carefully considering all of the above and for the reasons stated in this memorandum, the Court will **GRANT** RLI's motion for summary judgment (Court File No. 57) and **DECLARE** RLI has no duty to defend or indemnify Defendants. Further, the Court will **DENY** Grand Pointe's motion for summary judgment (Court File No. 90) and Defendants' motion for summary judgment

---

[1] Grand Pointe is an intervening party in the lead case (1:05-CV-161) and a named defendant in the case that was consolidated with the lead case (1:05-CV-157).

[2] On June 29, 2006 the Court granted summary judgment in favor of Cincinnati Insurance Company in the lead case and declared Cincinnati had no duty to defend or indemnify Defendants (Court File Nos. 105, 106). Although many of the issues resolved in that decision are nearly identical to the issues raised in the current motions, the Court declined to address all motions for summary judgment in one memorandum "for the purpose of clarity" and "[d]ue to the additional issues raised" in the motions for summary judgment related to the RLI policy (Court File No. 105, p. 1, n.1).

(Court File No. 100).

## I. STANDARD OF REVIEW

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the burden is on the moving party to conclusively show there is more than a doubt genuine issues of material fact exist, *Frazier v. Honda Am. Mfg., Inc.*, 431 F.3d 563, 565-66 (6th Cir. 2005), and the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Cummings v. City of Akron*, 418 F.3d 676, 682 (6th Cir. 2005). However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. at 2552.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir.

2005).  The standard for summary judgment mirrors the standard for directed verdict.  *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.  The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52, 106 S. Ct. at 2512.  There must be some probative evidence from which the jury could reasonably find for the nonmoving party. *Id.* at 248, 106 S. Ct. at 2505. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment.  *Id.*; *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton County, Ohio*, 430 F.3d 783, 787 (6th Cir. 2005).

## II.  RELEVANT FACTS

Many of the facts applicable to this case have already been outlined by the Court (*See* Court File No. 105, pp. 3-7).  However, in the interest of clarity, the Court will state all facts relevant to a determination of the current motions under consideration in this memorandum.  Defendants are entities and individuals that developed and/or constructed a condominium building in Orange Beach, Alabama.  During the construction of the condominium building, Clifford Harbour ("Harbour"), on behalf of himself and the other Defendants, purchased insurance contracts from Stroud Cowart ("Cowart") who worked for Huffaker-Trimble Insurance Agency to insure against risks related to the condominium building (Court File No. 76, Exh. 1, Affidavit of Clifford Byrd Harbour, III ("Harbour Aff.") at ¶¶ 15-16). One such contract was a commercial umbrella liability policy issued to Defendants by RLI for the policy period January 29, 2001 to January 29, 2002 (Court File No. 90, Part 3 ("RLI Policy")).  An underlying insurance policy was also purchased by Harbour.  This underlying insurance policy was issued by Steadfast Insurance Company ("Steadfast") (Court File

4

No. 90, Part 5 ("Steadfast Policy")).

According to Defendants, they requested Cowart to include a standard subcontractor exception to the "insured's work" exclusion in the RLI policy (Court File No. 76, p. 17). The exception was not included in the RLI policy (*See* RLI Policy at p. 4). Defendants also assert Cowart told Harbour and Robert Chandler ("Chandler") they "would have the same coverage as the underlying policies that provided coverage for the subcontractor work" (Harbour Aff. at ¶ 19; *See* Court File No. 76, Part 4, Affidavit of Robert Chandler ("Chandler Aff.") at ¶ 20-21). After discussing the policies with Cowart, Chandler "believed that the policies . . . provided coverage for subcontractors and faulty workmanship . . ." (Chandler Aff. at ¶ 19).

On August 27, 2003 Grand Pointe filed suit in Baldwin County, Alabama against Defendants and other entities and individuals associated with the condominium building. Grand Pointe asserts the following causes of action against Defendants in its seventh amended complaint[3]: (1) Negligence; (2) Wantonness; (3) Breach of Warranty; (4) Breach of Contract; (5) Violations of Alabama's Uniform Condominium Act; and (6) Misrepresentation and/or Suppression (Court File No. 89, Part 3, Seventh Amended Complaint). According to Grand Pointe's complaint, Defendants negligently or wantonly (a) failed to properly design, supply, install, and/or specify components of the structure, (b) failed to supervise and/or inspect the construction of the condominium building; (c) installed and/or applied materials utilized in the construction of the condominium structure; (d)

---

[3] The parties' briefs mostly reference the fourth amended complaint. However, after RLI filed its reply brief, Grand Pointe filed a seventh amended complaint. Some additions to the seventh amended complaint show a clear intention on the part of Grand Pointe to allege sufficient facts for this Court to determine RLI has a duty to defend and indemnify Defendants. Since the seventh amended complaint contains the most recent allegations and because the seventh amended complaint was filed before the Court ruled on the current summary judgment motions, the Court will refer to and consider only the seventh amended complaint.

manufactured, supplied, inspected, and/or installed building components; (e) failed to determine whether materials and systems complied with applicable codes, specifications, and/or standards; (f) made misrepresentations as to code compliance; (g) misrepresented and/or certified the building components and/or construction of the condominium building; and (h) failed to repair and/or properly analyze application of the building components (Court File No. 89, Exh. 2, at ¶¶ 27-32).

With respect to the breach of warranty cause of action, Defendants allegedly warranted the condominium building, structure, and components were suitable for their intended uses, met the applicable plans and specifications, and were code compliant. Defendants also allegedly breached the warranties by failing to provide components and/or finished products suitable for the intended purpose and/or by installing components in a manner inconsistent with the plans, specifications, and industry standards (*Id.* at ¶¶ 35-38). Grand Pointe further submits Defendants breached contract obligations owed to it and/or its membership (*Id.* at ¶¶ 40-41).

As for the Alabama Uniform Condominium Act, Defendants allegedly failed to provide a condominium building substantially consistent with the declarations, applicable regulations and codes, industry standards, and the plans and specifications. In addition, Grand Pointe avers the Uniform Condominium Act was violated when Defendants provided improper information concerning the condominium maintenance expenses (*Id.* at ¶¶ 44-45).

Regarding the misrepresentation and suppression causes of action, Grand Pointe posits Defendants knew or should have known about various problems with the condominium units but concealed the problems (*Id.* at ¶ 49). Specifically, Grand Pointe states "defendants . . . knew, or should have known, that the improper use of non-compliant sliding glass door and/or windows incorporated in the building envelope, as well as the lack of properly installed exterior wall system,

6

exterior coating system, roofing system, and sealants would result in the propensity of the building systems to permit moisture intrusion" (*Id.* at ¶ 51).

As a result of Defendants' alleged negligence and wantonness, Grand Pointe alleges it and its membership have suffered several different kinds of damages (*Id.* at ¶¶ 30, 34). In particular, Grand Pointe avers "[a]s a direct and proximate consequence of the [] conduct of the Defendants . . . [Grand Pointe] and/or its membership have been caused to suffer . . . other consequential damage caused by the entry of moisture into the condominium building structure" (*Id.*).

In addition, the following allegations are made:

> Defendants provided limited labor and materials in connection with the actual construction of the Grand Pointe Condominium building, the scope of their actual work generally limited to installation of reinforced concrete walls. All other labor and materials utilized in construction of the Grand Pointe Condominium building were provided by subcontractors. As a result of the negligence/wantonness of the . . . Defendants, work performed and materials supplied by other subcontractors (some are parties to this litigation while others are not) has suffered physical damage and must be repaired or replaced by [Grand Pointe]. Furthermore, the Defendant subcontractors and material suppliers performed their work negligently/wantonly, or supplied and installed materials negligently/wantonly, so that work performed and materials supplied by the . . . Defendants, and work performed and materials supplied by other subcontractors not parties to this litigation, was damaged and must be repaired or replaced by [Grand Pointe]. Furthermore, in the process of repairing or replacing the defective work, and repairing or replacing the now damaged but otherwise not defectively installed work and materials, physical damage to presently undamaged non-defective work and materials will occur. This further damage to property is a proximate result of the negligence/wantonness of all Defendants and is a loss to [Grand Pointe].

(*Id.* at ¶ 26; *see also*, *Id.* at ¶¶ 29, 33, 37, 42, 46, 50).

RLI agreed to provide Defendants with a defense to the Grand Pointe suit subject to a reservation of rights (Case No. 1:05-CV-157, Court File No. 1, Complaint ("RLI Complaint"), ¶ 18). Subsequently, RLI brought the present action seeking a declaration it has no duty to defend or indemnify Defendants and reimbursement of all fees and costs incurred by RLI in providing

7

Defendants a defense in the Grand Pointe action (*Id.* at pp. 7-8). On March 20, 2006 RLI filed a motion for summary judgment contending it does not have a duty to defend or indemnify Defendants because (a) there are no allegations of "property damage" as that term is defined in the policy and by Tennessee case law; (b) there has not been an "occurrence" as that term is defined in the policy; and/or (c) several policy exclusions apply. Grand Pointe and Defendants respond RLI has a duty to defend and indemnify because (a) there are allegations of "property damage;" (b) there has been an "occurrence;" (c) the policy exclusions do not apply; (d) the RLI policy "follows form" with the Steadfast policy; and/or (e) RLI should be estopped from denying coverage.

## III.  DISCUSSION

### A.  Duty to Defend

Whether an insurance company has a duty to defend an insured in an underlying action presents a legal question. *St. Paul Fire & Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 833 (Tenn. 1994); *Morgan v. Utica Mut. Ins. Co.*, 2000 WL 1276755, at *2 (6th Cir. Aug. 30, 2000) (unpublished). Under Tennessee law,[4] an insurance company's duty to defend its insured is triggered by a complaint that alleges a potential basis for the claimant to recover against the insured that is within the risk against which it is insured. *Torpoco*, 879 S.W.2d at 835; *Bituminous Fire & Marine Ins. Co. v. Izzy Rosen's, Inc.*, 493 F.2d 257, 263 (6th Cir. 1974) (applying Tennessee law). If it is plain from the face of the underlying complaint the allegations fail to state facts that bring the case within or potentially within the policy, no duty to defend exists. *Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471, 480 (Tenn. Ct. App. 1996). An insurer's duty to defend

---

[4] All parties agree Tennessee law controls in this declaratory judgment action.

8

depends solely on the allegations of the complaint filed against the insured. *See Torpoco*, 879 S.W.2d at 834-35. "If even one of the allegations is covered by the policy, the insurer has a duty to defend, irrespective of the number of allegations that may be excluded by the policy." *Drexel Chem. Co.*, 933 S.W.2d at 480.[5]

In Tennessee, exceptions, exclusions, and limitations in insurance policies must be construed against the insurance company and in favor of the insured. *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 886 (Tenn. 1991). The entire policy, however, including insuring clauses and exceptions, must be read as a whole. *Am. Sav. & Loan Ass'n v. Lawyers Title Ins. Corp.*, 793 F.2d 780, 782 (6th Cir. 1986). Further, exceptions should not be construed so narrowly as to defeat their evident purpose. *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 8 (Tenn. Ct. App. 1998). With these principles in mind, the Court will now reference and discuss the policies at issue.

    **1.    Relevant Policy Language (RLI Policy)**

**I.    INSURING AGREEMENT**

We will pay on behalf of the insured all sums which the insured becomes legally obligated to pay as ultimate net loss, because of:

**A.** Bodily injury and property damage . . . caused by an occurrence which takes place during he policy period . . . .

. . .

**V.    EXCLUSIONS**

. . .

---

[5] Since the Court need only to look at the face of the underlying complaint, Defendants argument the Court should delay a determination on the duty to defend issue to allow the parties to conduct additional discovery (Court File No. 76, pp. 1, 5) is without merit.

9

**E.** INSURED'S PRODUCT - property damage to the insured's product arising out of it or any part of it.

**F.** INSURED'S WORK - Property damage to the insured's work arising out of it or any part of it and included in the products-completed operations hazard.

. . .

**VI. DEFINITIONS**

. . .

**H.** Insured's product means:

1. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   a. An insured;

   b. Others trading under an insured's name; or

   c. A person or organization whose business or assets an insured has acquired; and

2. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products

Insured's product includes:

1. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of insured's product; and

2. The providing of or failure to provide warnings or instructions.

. . .

**I.** Insured's work means:

1. Work or operations performed by an insured or on an insured's behalf; and

10

    **2.** Materials parts or equipment furnished in connection with such work or operations.

    Insured's work includes:

    **1.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of insured's work; and

    **2.** The providing of or failure to provide warnings or instructions.

. . .

**K.** Occurrence means:

    **1.** with respect to bodily injury and property damage, an accident, including continuous or repeated exposure to substantially the same general harmful conditions, that takes place during this policy period;

    . . .

. . .

**N.** Property damage means:

    **1.** Physical injury to tangible property, including all resulting loss of use of that property. . . .

    **2.** Loss of use of tangible property that is not physically injured. . . .

. . .

## PUNITIVE DAMAGES
## FOLLOWING FORM

This policy does not apply to any liability of an insured for punitive or exemplary damages, fines or penalties, unless such liability is covered by valid and collectible underlying insurance as described in the Schedule of Underlying Insurance for the full limit shown.

. . .

11

(RLI Policy) (emphasis removed in part from original).

## 2. Relevant Policy Language (Steadfast Policy)

**SECTION I- COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as "damages" because of "bodily injury" and "property damage" to which this insurance applies. . . .

   b. This insurance applies to "bodily injury" and "property damage" only if:

   (1) The "bodily injury" or "property damage" is caused by an "occurrence" . . . .

. . .

This insurance does not apply to:

. . .

j. Damage to Property

   "Property damage" to:

   . . .

   (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

   (6) That particular party of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on such property.

   . . .

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard"

k.  Damage to Your Product

"Property damage" to "your product" arising out of it or any part of it.

l.  Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

. . .

**SECTION V - DEFINITIONS**

6.  "Damages" means money that is paid to compensate an injured party for "bodily injury," "property damage," "personal injury" or "advertising injury".

. . .

14. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in "bodily injury" or "property damage."

. . .

18. "Property damage" means:

   a.  Physical injury to tangible property, including all resulting loss of use of that property. . . .

   b.  Loss of use of tangible property that is not physically injured. . . .

. . .

21. "Your Product" means:

13

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;
(2) Others trading under your name; or
(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

. . .

22. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions in connection with such goods or products.

(Steadfast Policy) (emphasis removed in part from original).

### 3. Coverage

RLI argues in its motion for summary judgment the underlying complaint merely asks for

14

damages needed to correct faulty workmanship which, under the RLI policy and Tennessee law, does not fall within the scope of "property damage." Grand Pointe and Defendants argue the underlying complaint does more than request damages for faulty workmanship. In support of this argument, Grand Pointe and Defendants point to the following allegations contained in the underlying complaint: (1) Grand Pointe has or will suffer consequential damage to correct and/or repair the defective condominium building; (2) Grand Pointe has suffered consequential damages from the entry of moisture into the condominium building structure; and (3) various subcontractors were engaged to perform specific tasks in connection with the construction of the condominium building.

For the reasons discussed in its previous memorandum (Court File No. 105, pp. 11-15), the Court rejects Grand Pointe and Defendants' position and concludes the previously listed allegations in the underlying complaint do not result in coverage under the RLI policy. Although the relevant policy language in the Cincinnati Insurance Company's ("Cincinnati") policy is slightly different than the relevant language in the RLI policy, the differences are immaterial. Therefore, the Court's application of Tennessee law is the same with respect to the RLI policy as it was to the Cincinnati policy. In short, the damages alleged are damages to Defendants' own work product, not to something other than the Defendants' own work product.

Grand Pointe and Defendants assert in their respective motions for summary judgment and/or in response to RLI's motion for summary judgment the Court should determine RLI has a duty to defend (and possibly indemnify) because (1) the punitive damages provision in the RLI policy states it provides coverage for punitive damages if the underlying policy provides coverage for punitive damages; (2) the RLI policy "follows form" with the Steadfast policy which has a subcontractor

15

exception to the "your work" exclusion; and (3) Cowart made certain representations which should estop RLI from denying coverage. The Court will address each of these contentions in turn.

### (i) Punitive Damages "Follows Form" Provision

Under the punitive damages provision of the RLI policy, quoted above, RLI will cover liability for punitive damages if the underlying insurance covers such liability. The underlying policy is the Steadfast policy. The Steadfast policy provides Steadfast "will pay those sums that the insured becomes legally obligated to pay as 'damages' because of 'bodily injury' and 'property damage' to which this insurance applies" (Steadfast Policy at p. 2). Grand Pointe and Defendants argue this language in the Steadfast policy combined with the fact the Steadfast policy does not have a punitive damages exclusion, results in a conclusion the Steadfast policy covers claims for punitive damages. Therefore, the argument goes, because the underlying complaint alleges certain damages were caused by the wanton conduct of Defendants, the RLI policy covers at least one claim and therefore RLI has a duty to defend.

After reviewing the Steadfast policy, the Court concludes Grand Pointe and Defendants' argument misses the mark. Even if it can be said the Steadfast policy does in fact cover claims for punitive damages, the policy specifically requires the damages to flow from "bodily injury" or "property damage" to which the policy applies. There are no allegations of "bodily injury" or "property damage" in the Alabama litigation to which the Steadfast policy applies. Evidenced by the previously quoted portions of the Steadfast policy, it is clear under Tennessee law the damages alleged in the underlying complaint are not covered. Stated another way, because the Steadfast policy does not provide coverage for the damages alleged in the underlying complaint, the RLI policy does not provide coverage pursuant to the punitive damages provision.

16

### (ii) Subcontractor Exception

As the Court understands it, the usual insurance industry practice is for an umbrella policy to provide the same or more coverage than the underlying policy (Court File No. 76, Part 16, Affidavit of Stephen Holmes ("Holmes Aff."), at ¶¶ 8-9; Court File No. 76, pp. 18-19; Court File No. 85, pp. 17-18). In this case, the Steadfast policy (the underlying policy) provided broader coverage than the RLI policy (the umbrella policy) because the Steadfast policy had a subcontractor exception to the "your work" exclusion while the RLI policy did not have such an exception to its "insured's work" exclusion (*Id.*). Grand Pointe and Defendants contend the RLI policy should "follow form" with the Steadfast policy, pursuant to industry norms, and the Court should read the subcontractor exception to the "your work" exclusion from the Steadfast policy into it. Grand Pointe and Defendants have not cited any authority in support of their position. Therefore, the Court will not read the exception into the RLI policy. However, even if the Court were to read the standard subcontractor exception into the RLI policy, its conclusion there is no coverage under Tennessee law would remain unchanged for the reasons discussed in its previous memorandum (Court File No. 105, pp. 15-16).

### (iii) Estoppel

Grand Pointe and Defendants further argue Cowart promised RLI's policy would provide the same coverage as the Steadfast policy. Specifically, they contend Cowart promised or at least led them to believe the RLI policy would include the subcontractor exception to the "insured's work" exclusion (Court File No. 76, p. 17). Thus, they submit RLI should be estopped from denying coverage. Assuming estoppel principles would allow the Court to read the subcontractor exception into the RLI policy, Defendants would still not be covered for any damages resulting from the

17

litigation in Alabama (Court File No. 105, pp. 15-16).

For these reasons, the Court will **GRANT** RLI's motion for summary judgment and **DECLARE** RLI has no duty to defend Defendants. Further, the Court will **DENY** Grand Pointe and Defendants' motions for summary judgment.

### B. Duty to Indemnify

Grand Pointe and Defendants ask the Court to pretermit the issue of whether RLI has a duty to indemnify Defendants. For the reasons and authority already mentioned in its previous memorandum (Court File No. 105, pp. 16-18), even if the allegations in the Alabama litigation are proven true, they would not trigger a duty to indemnify. Thus, the Court will **GRANT** RLI's motion for summary judgment and **DECLARE** RLI has no duty to indemnify Defendants.

## IV. CONCLUSION

For the reasons discussed in this memorandum, the Court will **GRANT** RLI's motion for summary judgment (Court File No. 57) and **DECLARE** RLI has no duty to defend or indemnify Defendants. Also, the Court will **DENY** Grand Pointe and Defendants' motions for summary judgment (Court File Nos. 90, 100).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**